## Wilson *versus* The Bank of Montgomery County.

A stockholder of a bank, who is entitled to a pre-emption of additional stock authorized to be issued, cannot maintain an action against the bank for refusing to permit him to subscribe for such new stock, without proving that he demanded and offered to subscribe for the same.

This is a material averment in the declaration, and must be proved as laid.

ERROR to the Common Pleas of *Montgomery county.*

This was an action on the case, by David Wilson against the Bank of Montgomery County, to recover the value of certain shares of the new stock of said bank, to which he claimed to have a right of pre-emption.

The case was one of precisely similar character to that of the Bank of Montgomery *v.* Reese, 2 *Casey* 143, with this exception, that the present plaintiff gave no evidence that he demanded the new stock by offering to subscribe for the same.

The capital stock of the bank consisted of 8000 shares, of the par value of $50. Of this amount, 7101 shares had been subscribed for, leaving 899 shares in the hands of the bank. On the 2d February 1850, the bank resolved to increase the stock by allowing those of the stockholders "who had paid up their instalments in full," to subscribe for one additional share for every six shares of the stock they then held; and for that purpose books were to be opened, at the banking-house, between the 13th and 31st May 1850.

The plaintiff was, at that time, the holder of 144 shares of the capital stock, on which an instalment of $10 was still due. On the 1st June 1850, he paid all arrearages in full; but all participation in the new stock was denied to him.

The court below charged the jury that the plaintiff having given no evidence of a demand, or offer to subscribe for the new stock, or of a refusal on the part of the bank to permit him to subscribe, could not recover in this action, and their verdict should be for the defendant.

To this charge the plaintiff excepted, and a verdict and judgment having been given for the defendant, he removed the cause to this court, and here assigned the same for error.

[Wilson *v*. The Bank of Montgomery County.]

*Boyer*, for the plaintiff in error.—That David Wilson, as one of the stockholders of the Bank of Montgomery County, was part owner of the new stock distributed by the bank in 1850; that *the corporation was a trustee for him and the rest of the stockholders;* and that the bank, by their distribution of this stock, violated the duties of their trust, and the rights of the plaintiff, has been already established in the case of Reese *v*. The Bank of Montgomery County, twice decided by the Supreme Court, and reported in 2 *Casey* 143.

A demand was unnecessary, inasmuch as the bank had excluded the plaintiff by the terms of the resolution, which illegally appropriated the new stock to such stockholders only as *had* paid up their instalments in full: Dixon *v*. Oliver, 5 *Watts* 509; Hampton *v*. Speckenagle, 9 *S. & R.* 212. Besides, those belonging to the favoured class were alone notified of the distribution.

*Boyd* and *Chain*, for the defendant in error.—The case of Reese *v*. The Bank of Montgomery County has never been reported. It was essentially different from the present case. Reese had, while the books were open, paid the stock he held to its par value, and demanded of the bank his right to subscribe to the new stock. The books were open from the 13th of May 1850, to the 31st of the same month. On the 24th of May 1850, Reese demanded the new stock to which he conceived he was entitled, and offered to pay, and tendered the money for the same, and having been refused, brought suit and recovered his damages.

Mr. Justice Lowrie, in the opinion of the court, argues thus:— "The corporators might order the stock to be sold, and then the premiums would be shared among them at the next dividend, or they might allow each of the old stockholders to take his proportion of the new stock as nearly as that proportion could be fixed in integral shares. By the adoption of the latter course, each stockholder acquired a distinct and several right which any one could define by a mere arithmetical calculation. It was a right that could not be given to one without being given to all, and the *denial to the plaintiff of his share* was a legal injury, a violation of his personal right, for which he is entitled to compensation."

The plaintiff's recovery was based upon the *denial* to him of his *right* to the stock. Now there could be no *denial* until a *demand has been made*. Reese did demand the stock. He did all that he could do in order to secure the stock; and it having been refused, his right to damages was complete, and he became entitled to compensation. The denial of this right was a *tort*, the court say, which could be waived, and damages recovered in *assumpsit*.

In the present case the plaintiff never asked for the stock; he never offered to pay the $50 per share which was required to pay

[Wilson *v.* The Bank of Montgomery County.]

for the stock; he never asked that what was his right should be accorded to him.

The opinion of the court was delivered by

PORTER, J.—Of a certain amount of the stock issued under the resolution of February, the plaintiff had the right of pre-emption. The duty of the bank to perfect this right, by allowing him to subscribe, assumed the dignity of a trust. This was the ruling in 26 *Penna. State Reports* 143, and we perform a plain judicial duty in standing fast by that decision. Between the two cases there is a just distinction. That plaintiff went forward and said, here is my money, give me the stock. This one did nothing, except to make a tardy payment of instalments due on the old stock, and then to relapse into a tranquillity unbroken for nearly six years. He may have doubted whether this increase of stock would enhance its value, or he may have secured for his money a better investment. Of his possession of the money at the time, the record contains no evidence, and the presumption that a man, who is called to pay and does not, was able to pay, is not sufficiently justified by human experience to warrant its legal sanction. He certainly neither offered to pay nor to subscribe, and the law is too reasonable to force any man's rights upon him against his will. The fact that he fails to act while others are acting in a matter which concerns both, is sufficient proof of his acquiescence to prevent the destruction of what has been done by others through faith in that state of things. Had he notice of the resolution? The suit itself, based on the bank's action, shows that at some time he received notice. The declaration sets forth this time. It avers that, on the 2d of February, he was then and there ready to subscribe. This was his allegation, binding to the uttermost, though he failed to prove it, and it would be difficult to say how he could have stood ready to do that of which he had no knowledge. The language employed is said to be common and formal. Justly so, but not less operative on that account than if it embodied the profoundest original conception, for legal phraseology loses no force by age or use. We are, on these grounds, of opinion that the court below ruled the cause wisely.

Judgment affirmed.